CAMPBELL and others *vs.* WOODWORTH and others.

The rule or measure of damages, in an action of trespass for taking personal property, is the actual cash market value of the property, at the time of the taking; to which interest may, generally, be added. Evidence to show for what sum the goods, at some subsequent time, were actually sold by the defendant, at public auction, is inadmissible.

MOTION by the defendants for a new trial, on a bill of exceptions, taken at the circuit, ordered to be heard in the first instance at the general term.

*M. S. Newton*, for the defendants.

*S. Mathews*, for the plaintiffs.

*By the Court*, WELLES, J. Action for the taking of a quantity of goods, being the property of the plaintiffs. At the trial before Mr. Justice STRONG, at the Monroe circuit in April, 1857, the defendants proved their title to the goods in question, by a deed of assignment from Timothy Chapman, dated August 10th, 1853, by which said Chapman assigned his property, including the goods in question, to the plaintiffs in trust, to sell and dispose of the goods so assigned, and with the proceeds to pay the debts due to his creditors, according to the order of preference therein designated. The plaintiffs then proved that the defendants, Woodworth and Pardee, seized and took the goods in question from the possession of the plaintiffs in a certain store in the city of Rochester, and removed them to another store in the same city, and afterwards sold them. The defendant Woodworth was, at the time, sheriff of Monroe county, and the defendant Pardee his under sheriff, and they claimed to seize the goods by virtue of executions issued upon judgments against Timothy Chapman, recovered subsequently to the assignment to the plaintiffs.

The plaintiffs proved by Robert L. Nicholas, that he had been a dry goods merchant eighteen years, and that he had

carried on business as such for several years in the city of Rochester, and was acquainted with such goods as were taken by the sheriff. That he took an inventory of the goods seized by the sheriff on the 22d day of October, 1853. That some of the black silks were worth what they cost. The colored silks were not worth what they cost, but were salable goods; that the prints were new and were worth their cost in New York; that all the goods were first class goods and the best of the stock. That the amount of the goods taken, according to the value as estimated by him, was $4884.29. This was the fair cash value. That he had arrived at the value by taking the cost price in New York, of such of the silk goods as were new, and as to the residue of the silks, by making such deduction from the cost price as in his judgment would bring them down to their fair cash value in Rochester. The domestic goods were estimated by him at their cost at the factory. Other witnesses were called by the plaintiffs to prove the value of the goods, by estimating them in the same manner. The defendants, on the cross-examination of the plaintiffs' witnesses, proved that the plaintiffs, as assignees of Timothy Chapman, kept the goods assigned and taken by the defendants, after assignment, in the store theretofore occupied by said Chapman. That they kept the store open after the assignment, and sold the goods at wholesale and retail, until they were seized by the sheriff on the executions.

The plaintiffs then proved the interest on the aggregate value of the goods as above stated, and rested.

The defendants then called Edwin Scrantom, who proved that he had for many years prior to the sale of the goods taken by the sheriff, been, and then was, an auctioneer in the city of Rochester; that he had been accustomed to sell goods, wares and merchandise of all kinds, at public auction, both for the sheriff and on private account, and whole stocks of goods, as well as small parcels, and as many goods for owners who sold for their own benefit, as for people who were obliged to sell, and that his sales were mostly forced sales; about

half of his sales of dry goods were forced sales. That he sold the goods taken by the sheriff, at public auction in the city of Rochester, for the sheriff; that the sale was in every respect fair; and that there were a great many bidders at the sale.

The defendants' counsel here proposed to prove the aggregate sum for which the said goods sold; 1st. As one of the means of arriving at their fair market value. 2d. As one of the proper means of arriving at their value in the hands of the plaintiffs, as assignees for the benefit of creditors, they being bound by law to sell them at public auction, or in some other speedy manner, and convert them into money. This testimony was objected to by the counsel for the plaintiffs, was excluded by the court, and the counsel for the defendants excepted to the decision. The court thereupon instructed the jury that the plaintiffs were entitled to recover the value of the goods as proved by the plaintiffs, with interest thereon from the time of their seizure. The jury thereupon found a verdict for the plaintiffs for $6051.14.

From this statement of the case, it appears that the only question for us to decide is whether the evidence thus offered by the defendants was properly excluded. It is the only question now raised by the defendants' counsel.

The rule or measure of damages, in an action of trespass for taking personal property, is the actual cash market value of the property at the time of the taking, to which interest may generally be added. Legitimate evidence of such value was given in this case, without objection. The evidence rejected was offered for the purpose of showing what the goods, at some subsequent time, actually sold for by the defendants, at public auction. This, I think, was inadmissible. The defendants could give no good title to the goods on their sale, and persons buying, if they were acquainted with the facts, must have known that they were liable to be purchasing litigation. This would be very likely to hinder their offering, or paying, the fair cash value of the goods. The case does not show what length of time intervened between the taking by

the sheriff, and the sale at auction by Scrantom, the auctioneer. If that time was considerable it might have made a difference in the market value. The process of removing them might have made some difference, as might also the place where they were sold.

Again, suppose they had been sold by Scrantom for very much more than their actual value; would the plaintiffs have been entitled to the excess? I apprehend not, in this form of action, as the actual value was all the plaintiffs had the right to ask.

The defendants were wrongdoers, and they took the property at their peril of paying their actual value, at least. The offer was not to show the actual value of the goods, at the time of the taking, either by opinions of witnesses or otherwise; nor what the plaintiffs might have sold them for, consistently with their duties as trustees for the creditors of Chapman; but what they, the defendants, sold them for, without the power to make any title to purchasers, and under circumstances, and by an auctioneer of their own appointment.

I think the evidence was properly excluded, and that a new trial should be denied.

Ordered accordingly.

[MONROE GENERAL TERM, March 1, 1858. *Johnson,* *Welles* and *Smith,* Justices.]